# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-170

**STATE OF LOUISIANA**

**VERSUS**

**JON DICKERSON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 30167-09
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

**John Foster DeRosier**
**District Attorney – 14th Judicial District**
**Karen C. McLellan**
**Assistant District Attorney – 14th Judicial District**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**Telephone: (337) 437-3400**
**COUNSEL FOR:**
    **Plaintiff/Appellee – State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**Telephone: (337) 491-0570**
**COUNSEL FOR:**
    **Defendant/Appellant – Jon Dickerson**

**Jon Dickerson**
**General Delivery**
**Louisiana State Prison**
**Angola, LA 70712**

**THIBODEAUX, Chief Judge.**

Between the evening of March 9, 2009 and the morning of March 10, 2009, the victim, Darrell Schaub, died as a result of having his throat cut. On March 11, 2009, Defendant, Jon Talbert Dickerson, was arrested for his involvement in a domestic disturbance. After he was booked, several credit cards belonging to the victim were found in Defendant's pocket. Following an investigation to locate the owner of the credit cards, the victim's body was discovered on March 16, 2009, behind the Parkway Motel in DeQuincy, Louisiana. Defendant was subsequently charged with second degree murder. After a jury trial, Defendant was found guilty and sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence. Defendant appeals, contending that there was insufficient evidence to find him guilty beyond a reasonable doubt and that the trial court erred in denying his request to ascertain the identities of two confidential informants involved in the case. For the following reasons, we affirm the trial court's judgment. However, we remand this matter to the trial court with instructions to provide Defendant with proper written notice of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8.

I.

**ISSUES**

We shall consider whether:

(1)     there was insufficient evidence, when viewed in the light most favorable to the prosecution, for a jury to find Defendant guilty of second degree murder beyond a reasonable doubt; and

(2)    the trial court erred in denying Defendant's request to ascertain the identities of the confidential informant and CrimeStopper's tipster involved in this case.

## II.

## FACTS AND PROCEDURAL HISTORY

On March 11, 2009, Thomas Shirley, a patrol officer with the DeQuincy Police Department, was responding to a domestic disturbance when he found Defendant fighting with his sister. Officer Shirley arrested Defendant and transported him to DeQuincy Police Department headquarters. During booking, several credit cards belonging to Darrell Schaub and Deanna Brissey were found in Defendant's possession.

A detective with the DeQuincy Police Department was assigned to investigate the credit cards found in Defendant's possession. He learned that Mr. Schaub was staying at the Parkway Motel. On March 16, 2009, he went to the motel where he found Mr. Schaub's room in disarray. Behind the motel, Mr. Schaub's decomposing body was found tucked between a discarded mattress and box spring. The victim's truck was located on March 20, 2009, hidden in a wooded area close to an empty house owned by Defendant's parents.

Doctor Terry Welke, a forensic pathologist with the Calcasieu Parish Coroner's Office, performed the autopsy on the victim's body. He established that Mr. Schaub died as a result of his throat being cut. He estimated death occurred in the early morning of March 10, 2009.

Several days after hearing about the murder, Dawn Vercher, whose husband was a friend of Defendant's, informed police about a recent encounter with Defendant on the morning of March 10, 2009. She testified that while she

2

was preparing her children for school, Defendant showed up covered with blood. He told her that he had been in Houston buying drugs when someone shot his friend, and he had to stab the shooter. She said he left the house, then within a short time, came back and wanted to take a shower, but she made him use the sink. She said he started to leave the discarded, bloody clothes there, but she made him take the clothes with him. She then threw away the sponge he used to clean himself. She identified the victim's truck as the one Defendant was driving.

Defendant's clothes were confiscated after he was booked for the domestic disturbance complaint. Several scrapings and buccal swabs were taken from both the victim and Defendant. The victim's DNA, via a blood stain, was located on Defendant's pants. Blood stains on Defendant's shoes also proved to be the victim's. While there was evidence of blood on the knife found in close proximity to the victim's body, DNA analysis proved inconclusive.

Brent Young, a detective with the Calcasieu Parish Sheriff's Office, testified that on or about April 14, 2009, he received a tip through CrimeStoppers regarding Devin "Bookie" Patrick. According to the tipster, Mr. Patrick had a bite mark on his hand and should be investigated in the matter of Mr. Schaub's murder. Detective Young further testified that he received the same information from a confidential informant on March 30, 2011. Based on these two tips, Detective Young made contact with Mr. Patrick. Mr. Patrick had an injury on one of his hands. He told the detective that it was a grease burn from frying chicken. Detective Young stated the injury did not appear to be a bite wound. He further testified he had no other information to connect Mr. Patrick to the motel murder.

Detective Young also testified that on April 14, 2009, he received a CrimeStopper's tip, which stated that Deanna Brissey's vehicle was involved in a

3

double murder in DeQuincy and the bodies were buried by an old crash site where someone had died in the crash. Ms. Brissey, whose credit cards were found in Defendant's possession, stated she knew Defendant. Detective Young examined the vehicle and found no evidence to "indicate blood or otherwise any crime scene."

Defendant testified that he had initially lied to the police regarding his involvement with the killing of Mr. Schaub. He stated he was afraid to tell the police the truth because he was scared of Mr. Patrick. He explained that on March 9, 2009, he had permission to use Mr. Schaub's truck to run errands around town, including purchasing cocaine for Mr. Schaub. While he admitted he initially told the police that he found Mr. Schaub's credit cards in a black bag under a railroad trestle, he testified that Mr. Schaub actually allowed him to use the cards, which were kept in the ashtray of the truck, to purchase gas for the truck, alcohol, cigarettes, and any other little item he may have needed. Defendant testified that he returned to the motel early in the morning on March 10, 2009. He found the victim's door open and the victim missing. He then encountered Mr. Patrick, bare-chested and breathing hard, coming through a breezeway which led to the back side of the motel. Mr. Patrick told him that he had gotten into a fight with the victim. Mr. Patrick asked Defendant to drive Mr. Schaub's truck around to the back of the motel. After driving behind the motel, Defendant testified that Mr. Patrick told him to grab the victim's hands while Mr. Patrick grabbed the victim's legs. Defendant said he did not know what condition the victim was in at this time, as it was dark and there were no lights behind the motel. As they were walking backwards with the victim, Defendant tripped and got blood on him. He said he freaked out and told Mr. Patrick he could not help and left in the truck. Defendant

testified that he drove to an old house that his parents owned, where he parked the truck and stayed for the night. He burned the old clothes in the backyard burn pile.

Defendant further testified that Ms. Vercher lied. He said that she did not like him because he did drugs with her husband, Roy, and because Roy had an affair with Defendant's sister. He also explained he would not have killed Mr. Schaub because Mr. Schaub owed him money for drugs that were fronted to him.

On September 10, 2009, the grand jury indicted Defendant for the second degree murder of Darrell Schaub, a violation of La.R.S. 14:30.1. Defendant filed a "Motion to Compel Identification of Confidential Informant, or Alternatively, to Quash the Bill of Indictment with Incorporated Memorandum." A hearing on the motion was held, and the motion was denied. After filing for a writ review with this honorable court, the trial court's ruling was affirmed. *State v. Dickerson*, 12-181 (La.App. 3 Cir. 4/23/12) (unpublished opinion).

On June 5, 2013, Defendant filed a "Motion for In Camera Inspections of CrimeStoppers Documents and Confidential Informant Information with Incorporated Memorandum La. R.S. 15:477.1 & C.E. 514." Following a hearing, the trial court denied Defendant's motion.

A jury trial commenced, and on June 24, 2013, the jury found Defendant guilty as charged. Defendant was sentenced on June 27, 2013, to life imprisonment without the benefit of parole, probation, or suspension of sentence. Defendant now appeals, arguing that there was insufficient evidence to find him guilty beyond a reasonable doubt and that the trial court erred in denying his request to discover the identity of the confidential informant and CrimeStopper's tipster.

III.

## STANDARD OF REVIEW

> In *State v. Bryant*, 12-233 (La.10/16/12), 101 So.3d 429, the Louisiana supreme court addressed the sufficiency of the evidence claims, reiterating that the appellate review of such claims is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See State v. Captville*, 448 So.2d 676 (La.1984). In applying the *Jackson v. Virginia* standard, the appellate court must determine that, when viewed in the light most favorable to the prosecution, the evidence is "sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *Bryant*, 101 So.3d at 432. *See also* La.Code Crim.P. art. 821.

*State v. Williams*, 13-497, p. 3 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, 1239.

In regards to whether the trial court erred in denying Defendant's request to discover the identities of the confidential informant and the CrimeStopper's tipster, the identity of a confidential informant should be made known to the accused only when his right to prepare his defense outweighs the need to protect the informant and the free flow of information. *State v. Smith*, 09-259 (La.App. 5 Cir. 11/24/09), 28 So.3d 1092. As the trial court is afforded great discretion in this determination, we review the trial court's decision under an abuse of discretion standard of review. *See id.*

IV.

## LAW AND DISCUSSION

### *Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to convict him of second degree murder. Defendant asserts that another man, Devin "Bookie" Patrick, committed the murder. Defendant argues the only evidence directly

6

connecting him to the offense was the victim's blood found on his pants and shoes. However, he claims that for a confused moment, without realizing what had transpired, he attempted to help Mr. Patrick put the injured victim into the victim's truck. Accordingly, the evidence was insufficient to convict him of murder. We disagree.

We have previously outlined the proper means of considering insufficient evidence claims:

> In *State v. Spears*, 05-964, p. 3 (La.4/4/06), 929 So.2d 1219, 1222-23, the supreme court stated that:
>
>> constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt. *State v. Mussall*, 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law.
>
>> "Evidence may be either direct or circumstantial." *State v. Jacobs*, 07-887, p. 12 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 551, *writ denied*, 11-1753 (La.2/10/12), 80 So.3d 468, *cert. denied*, --- U.S. ---, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012). We note that, whether the conviction is based on direct evidence or solely on circumstantial evidence, the review is the same under the *Jackson v. Virginia* standard. *State v. Williams*, 33,881 (La.App. 2 Cir. 9/27/00), 768 So.2d 728 (citing *State v. Sutton,* 436 So.2d 471 (La.1983)), *writ denied*, 00-99 (La.10/5/01), 798 So.2d 963. Circumstantial evidence is that where the main fact can be inferred, using reason and common experience, from proof of collateral facts and circumstances. *Id.* Where the conviction is based on circumstantial evidence, in order to convict, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438.

*State v. Williams*, 124 So.3d at 1239-40.

At trial, Defendant testified he did not kill the victim and the jury incorrectly relied on the testimony of Ms. Vercher, the self-serving testimony of Mr. Patrick, and circumstantial evidence. However, it is obvious the jury did not believe Defendant's testimony. As credibility of the witness is a matter of weight of the evidence and not sufficiency, determination of the credibility is left to the trier-of-fact's sound discretion and will not be re-weighed on appeal. *State v. F.B.A.*, 07-1526 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, *writ denied*, 08-1464 (La. 3/27/09), 5 So.3d 138.

Furthermore, reliance on the evidence outside of witness testimony did not impinge on due process as such reliance was reasonable upon a full review of the record. The victim's blood was found on Defendant's clothing and shoes, and Defendant was in possession of three of the victim's credit cards and the victim's truck. Defendant further testified that he burned the bloody clothing, which he admitted connected him to the crime. It was not until May 2011 that Defendant finally alleged that Mr. Patrick was the one who murdered Mr. Schaub. Notably, despite Defendant's assertion that Mr. Patrick committed the murder, no blood or physical evidence was ever linked to Mr. Patrick. The jury could have reasonably interpreted Defendant's behavior of not going to the police and destroying evidence as an attempt to avoid apprehension, a circumstance from which a trier of fact may infer a guilty conscience. *State v. Trammell*, 46,725 (La.App. 2 Cir. 11/9/11) 78 So.3d 205, *writ denied*, 12-53 (La. 4/20/12), 85 So.2d 1269.

Finally, "[s]pecific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed

criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific intent to kill or inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. *State v. Patterson*, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, *writ denied*, 11-338 (La. 6/17/11), 63 So.3d 1037. The victim's throat was clearly cut, which is indicative of specific intent to kill. Considering the record as a whole in the light most favorable to the prosecution, there was sufficient evidence for a reasonable trier of fact to find Defendant guilty beyond a reasonable doubt. As such, we find no merit in Defendant's sufficiency of evidence claim.

### *Request to Ascertain the Identities of Confidential Informants*

Defendant asserts that the trial court erred in denying his request to ascertain the identities of the confidential informant and Crimestopper's tipster. However, this claim has no merit on appeal.

Under the "law of the case" doctrine, prior decisions of the appellate court are considered binding and may not be reconsidered on appeal absent clear error. *Juneau v. State*, 06-1653 (La.App. 3 Cir. 5/2/07), 956 So.2d 728, *writ denied*, 07-1177 (La. 9/14/07), 963 So.2d 1004; *State v. Molineux*, 11-275 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, *writ denied*, 11-2556 (La. 3/30/12), 85 So.3d 117. "[T]he [law of the case] doctrine is *discretionary* and should not be applied where it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous." *Juneau*, 956 So.2d at 733 (quoting *Trans La. Gas Co. v. La. Ins. Guar. Ass'n*, 96-1477 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896) (alternations in original).

Here, Defendant filed a supervisory writ seeking a review of the trial court's denial of his "Motion to Compel Identification of Confidential Informant, or Alternatively, to Quash the Bill of Indictment with Incorporated Memorandum," wherein he sought the name of the confidential informant and specific information obtained from the CrimeStopper tipster. On April 23, 2012, this court ruled:

> **WRIT DENIED:** Defendant failed to provide the exceptional circumstances necessary to outweigh the public interest in protecting the informant's identity or the identity of the CrimeStopper tipster. *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, *cert denied*, 529 U.S. 1056, 120 S.Ct. 1562 (2000) and *State v. Williams*, 05-459 (La.App. 4 Cir. 1/18/06), 925 So.2d 567, *writ denied*, 06-1029 (La. 11/3/06), 940 So.2d 658. There was no error in the trial court's ruling.

*Dickerson*, 12-181. As this honorable court has already ruled on the issue of whether Defendant is entitled to discover the identities of the informants, it may not be reconsidered on appeal absent clear error by the appellate court. Defendant has failed to present any new evidence showing that the denial amounted to clear error or an unjust result. As such, we shall not reconsider Defendant's right to discover the identity of the informants on appeal.

Subsequent to the writ denial by this honorable court, Defendant filed a "Motion for In Camera Inspections of CrimeStoppers Documents and Confidential Informant Information with Incorporated Memorandum La. R.S. 15:477.1 & C.E. 514," wherein he requested that "the court conduct *in camera* inspection of the CrimeStoppers reports and confidential informant information and determine whether such material shall be considered privileged or shall be disclosed to the defense." After a hearing, the motion was denied. Defendant now argues the trial court erred by not providing a "complete" in camera inspection, thus precluding this court from "ascertain[ing] whether the confidential informant

10

was reliable, whether the individuals had been used in the past, and the basis for the information they provided." Furthermore, Defendant argues that "[c]ounsel for Jon Dickerson was not seeking to find out the actual names of the confidential informant/tipsters, only the extent of their knowledge and whether the police sought out the basis for their belief that Devin Patrick was the perpetrator of the murder."

Again, there is no merit to Defendant's argument. Louisiana Revised Statutes 15:477.1, in pertinent part, provides:

> B.  No person shall be required to disclose, by way of testimony or otherwise, a privileged communication between a person who submits a report of alleged criminal activity to a crime stoppers organization and the person who accepts the report on behalf of a crime stoppers organization or to produce, under subpoena, any records, documentary evidence, opinions, or decisions relating to such privileged communication:
>
> > (1)  In connection with any criminal case or proceeding.
> >
> > (2) By way of any discovery procedure.
>
> C.  Any person arrested or charged with a criminal offense may petition the court for an in camera inspection of the records of a privileged communication concerning such person made to a crime stoppers organization.  The petition shall allege facts showing that such records would provide evidence favorable to the defendant and relevant to the issue of guilt or punishment.  If the court determines that the person is entitled to all or any part of such records, it may order production and disclosure as it deems appropriate.

As noted by the State, the trial court conducted an in camera inspection of the CrimeStopper's questionnaire and reported that there was no additional information that was not revealed to Defendant via the police reports during discovery.  In brief, Defendant does not state what more the trial court could have

11

done to have conducted a "complete" in camera inspection. As such, we find that the trial court did not abuse its discretion in denying Defendant's motion.

## *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we submit that there is one error patent.

The record before this court does not indicate that the trial court advised the Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court should be directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within thirty days of the rendition of this opinion and by filing written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the trial court's judgment. The trial court is instructed on remand to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending him appropriate written notice within thirty days of the rendition of this opinion. The trial court is further instructed to file written proof that Defendant received such notice in the record of the proceedings.

**AFFIRMED; REMANDED WITH INSTRUCTIONS**.

12